# STATE OF MICHIGAN

# COURT OF APPEALS

In re KEILLOR, Minors.

FOR PUBLICATION
June 28, 2018
9:05 a.m.

No. 340395
Wayne Circuit Court
Family Division
LC No. 16-523730-NA

Before: RONAYNE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

RIORDAN, J.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children, KK-1 and KK-2, pursuant to MCL 712A.19b(3)(b)(*iii*) (a nonparent adult's act caused sexual abuse and a reasonable likelihood exists that the child will suffer abuse by the nonparent adult if returned to the parent's home), and MCL 712A.19b(3)(j) (a reasonable likelihood exists based on the conduct or capacity of the child's parent, that the child will be harmed if returned to the home of the parent). We affirm.

## I. FACTUAL BACKGROUND

Respondent adopted the minor children in 2011. In 2016, Child Protective Services (CPS) began an investigation into physical abuse of the minor children by respondent. Respondent pleaded no contest to the allegations in the petition on January 5, 2017, and the trial court took jurisdiction over the minor children. Later, a supplemental petition to terminate respondent's parental rights was filed after KK-1 made allegations of sexual abuse by respondent's live-in boyfriend, who fit the statutory definition of a "nonparent adult." See MCL 722.622(v).[1] On August 31, 2017, the trial court held a trial both to adjudicate the new allegations and regarding the request to terminate respondent's parental rights. KK-1 provided testimony regarding the alleged sexual abuse by the nonparent adult.

---

[1] I cite the alpha designations of MCL 722.622, as amended by 2016 PA 35, effective from March 8, 2016 to April 5, 2017, because the alleged sexual abuse in this case occurred sometime during 2016. Although the alphabetical references may have often changed over the years, the substantive definitions have remained the same, so our analysis has not been affected by any amendments.

After hearing the evidence, the trial court adjudicated the new allegations, finding that a preponderance of the evidence supported the existence of sexual abuse by the nonparent adult. The parties then argued regarding termination of respondent's parental rights and whether termination would be in the best interests of the minor children. The trial court took the issue under advisement, eventually releasing a written opinion terminating respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*iii*) and (j). This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred when it terminated her parental rights to the minor children. I disagree.[2]

## A. STANDARD OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710. "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "[W]e review de novo questions of statutory interpretation." *In re Harper*, 302 Mich App 349, 352; 839 NW2d 44 (2013) (internal quotation marks omitted).

## B. APPLICABLE LAW AND ANALYSIS

The trial court found clear and convincing evidence of statutory ground for termination under MCL 712A.19b(3)(b)(*iii*), which provides:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

Although MCL 712A.19b does not provide definitions for the pertinent terms "nonparent adult" and "sexual abuse," those terms are found and defined in the Child Protection Law, MCL 722.601 *et seq*. Indeed, § 19b twice refers to and adopts the definition of "sexual abuse" "as that

---

[2] I note that this case is being published at the request of the dissent pursuant to MCR 7.215(A).

term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622." MCL 712A.19b(3)(k)(*ix*) and (*l*)(ix).

MCL 722.622(y) defines "sexual abuse" as follows:

"Sexual abuse" means engaging in sexual contact or sexual penetration as those terms are defined in section 520a of the Michigan penal code, 1931 PA 328, MCL 750.520a, with a child.

In this case, there is no allegation of sexual penetration. The definition of "sexual contact" is as follows:

"Sexual contact" includes the intentional touching of the victim's or actor's *intimate parts* or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, *if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification*, done for a sexual purpose, or in a sexual manner for:

(*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger. [MCL 750.520a(q); Emphasis added.]

In turn, MCL 750.520a(f) defines "intimate parts" as "includ[ing] the primary genital area, groin, inner thigh, buttock, or breast of a human being." Thus, in order for there to have been grounds for termination pursuant to MCL 712A.19b(3)(b)(*iii*), the trial court must have found clear and convincing evidence that the nonparent adult touched KK-1's "primary genital area, groin, inner thigh, buttock, or breast" in a manner that "can reasonably be construed as being for the purpose of sexual arousal or gratification . . . ." MCL 750.520a(f) and (q).

KK-1 testified that the nonparent adult touched her in an inappropriate manner during a trip to California with respondent. The nonparent adult slept with KK-1 in one room while KK-2 and respondent slept in another room. According to KK-1, it was strange and uncommon for the nonparent adult to be in bed with her. KK-1 provided the following pertinent testimony during direct examination regarding the night the nonparent adult touched her:

*Q.* All right. Did anything ever happen to you when [the nonparent adult] was sharing a room with you that made you feel bad or uncomfortable?

*A.* Yes.

*Q.* And, and what happened?

*A.* I was laying next to him and he was touching me.

*Q.* How was he touching you?

*A.* With his hand.

*Q.* And, and how did that come about? Did you ask him to touch you?

*A.* No.

*Q.* Okay. What—Were you awake when this happened?

*A.* Yes.

*Q.* And, and what—Did you have any kind of conversation with [the nonparent adult] at all before he touched you?

*A.* No. All I said was my stomach hurt.

*Q.* And you told that to [him]?

*A.* Yes.

*Q.* And after you told him that your stomach hurt, what did he do?

*A.* He started rubbing my stomach and going a little bit lower.

*Q.* And what were you wearing at the time?

*A.* I think I was wearing, I think I was wearing summer pajamas.

\* \* \*

*Q.* All right. Where was his hand on your body at that time?

*A.* Almost below my waist.

*Q.* And then what happened?

*A.* I pulled his hand out and said you were the reason why my stomach was hurting.

*Q.* Did he make any comment to you after that?

*A.* No. I just ran into the bathroom.

*Q.* What did you mean by that, you're the reason my stomach is hurting?

*A.* Because it made me feel uncomfortable where he, why he, where he was touching me.

*Q.* And after you went into the bathroom, how long did you stay there?

*A.* I stayed there for a couple minutes because I felt like I was gonna throw up.

*Q.* Did you throw up?

*A.* No.

* * *

*Q.* Did [the nonparent adult] ever touch you below your waist?

*A.* Yeah.

*Q.* And when did that occur? Before the bathroom or after?

*A.* Before.

*Q.* And before the bathroom, when he touched you below your waist, what exactly did he do, if you remember?

*A.* I don't remember.

*Q.* Did he ever touch your private parts?

*A.* Almost.

*Q.* And what do you mean by almost?

*A.* Like he was right there, but then I pulled his hand out and I went to the top bunk.

On cross-examination, respondent elicited the following testimony from KK-1:

*Q.* Now, except for this one incident in California where you say he touched you, that never happened before or since, is that right?

*A.* Yes.

*Q.* And this happened over a year ago?

*A.* I'm not sure.

*Q.* And if I understood you correctly, you said on direct examination that you told him your stomach was hurting?

*A.* Yes.

*Q.* And then he started rubbing your stomach and he started going down into your pants—

*A*. (Interposing) Yes.

*Q*. Is that right?

*A*. Yes.

*Q*. But he never got down to your private parts, is that right?

*A*. He started to.

*Q*. He started, but he never got there, right?

*A*. Yes.

Respondent contends that the testimony could not have established sexual abuse by the nonparent adult because KK-1 never testified that he actually touched her private parts. I disagree because the definition of "intimate parts" cannot be read so narrowly. While one part of the statute defining "intimate parts" references the "primary genital area," the definition also includes "groin" as an "intimate part." MCL 750.520a(f). The *Random House Webster's College Dictionary* defines groin as "the fold or hollow where the thigh joins the abdomen" and "the general region of this fold or hollow." Meanwhile, *The American Heritage Dictionary* defines "groin" as "[t]he crease at the junction of the thigh and the trunk, together with the adjacent area."

Respondent is correct that KK-1 never testified that the nonparent adult actually touched her vagina. However, KK-1 stated that the nonparent adult touched her below her waist, and repeatedly said that she had to take his hand "out." It is reasonable to infer that KK-1's use of the word "out" meant that the nonparent adult's hand was in her pants. Further, KK-1 testified that he "almost" touched her private parts while lowering his hand downward from her abdomen. Considering the broad area surrounding KK-1's private parts covered by the definition of "groin," KK-1's testimony established that the nonparent adult touched her "intimate parts." MCL 750.520a(f) and (q). It would be unreasonable to conclude that the area below KK-1's waist and pants line but above the opening of her vagina is not an "intimate part" when the definition also includes the "inner thigh." Thus, in my view, the trial court did not clearly err in determining that the nonparent adult touched KK-1's intimate parts. MCL 750.520a(f) and (q).[3]

I also conclude that KK-1's testimony established that the nonparent adult's touching could "reasonably be construed as being for the purpose of sexual arousal or gratification . . . ." MCL 750.520a(q). KK-1 stated that it was uncommon for the nonparent adult to sleep in bed

---

[3] In contrast, the dissent suggests young children should suffer adverse consequences if they take proactive steps, such as removing an abuser's hand from an intimate part of the body. Thus, MCL 712A.19b(3)(b)(*iii*), following the dissent's reasoning, would not apply to a child who seeks to protect herself during the commission of a sexual assault by an abuser.

with her, KK-2 and respondent were in another room, and the nonparent adult's touching caused her to be uncomfortable and feel nauseous. KK-1's testimony that she told the nonparent adult her stomach hurt *because* he was touching her, suggests that the touching began *before* KK-1 complained of a stomach ache. Therefore, the trial court also did not clearly err in finding that the nonparent adult touched KK-1 for the purpose of sexual arousal or gratification. *Id*. Consequently, the trial court did not clearly err in finding that clear and convincing evidence supported that the nonparent adult sexually abused KK-1. MCL 712A.19b(3)(b)(*iii*).

In order for termination to be proper pursuant to MCL 712A.19b(3)(b)(*iii*), the trial court also was required to find by clear and convincing evidence "that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home." The record shows that respondent did not and does not believe that the nonparent adult sexually abused KK-1. To wit, at the time of the trial, the nonparent adult was still living in the home with respondent. While respondent asserted that she would have the nonparent adult move out if so ordered by the trial court, I do not believe that the trial court clearly erred in finding otherwise. Provided that the nonparent adult still lives in respondent's house and testimony established that she does not believe KK-1's allegations of sexual abuse, the trial court did not clearly err in finding that clear and convincing evidence established that the minor children would suffer sexual abuse by the nonparent adult in the future. *Id*.

In sum, because termination was proper pursuant to MCL 712A.19b(3)(b)(*iii*), I need not consider the trial court's termination of respondent's parental right pursuant to subsection (j), *In re Ellis*, 294 Mich App at 32, but note that, for the same reasons, there was clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

### III. BEST INTERESTS

Respondent argues that the trial court clearly erred in determining that it was in the minor children's best interests to terminate respondent's parental rights. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews a trial court's determination regarding best interests for clear error. *In re White*, 303 Mich App at 713. "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (citations and quotation marks omitted).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). " '[T]he focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015), quoting *In re*

*Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App at 733.

In considering the issue of whether termination is in the best interest of the minor child, the trial court is permitted to consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, [] the advantages of a foster home over the parent's home . . . the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (internal citations and quotations omitted). "In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it." *Id*. at 63.

## B. ANALYSIS

As previously stated, there was testimony that the nonparent adult sexually abused KK-1 while on vacation in California. He did so while sleeping in the same bed with KK-1 while respondent and KK-2 were in a separate room. At trial, testimony established that respondent did not believe KK-1's allegations and could not explain why KK-1 slept alone with the nonparent adult. Furthermore, testimony of the family therapist showed that the bond between respondent and the minor children was broken. To wit, the family therapist stated that KK-1 would not engage with respondent at group sessions and that KK-2 followed her sister's lead. The minor children refused to visit with respondent, and the record established that the minor children were flourishing in their placement with other relatives, who were willing to adopt. In addition to the allegations of sexual abuse, the record was replete with accusations of serious physical abuse by respondent. Thus, given respondent's noted disbelief at KK-1's sexual abuse allegations, allowing the nonparent adult to remain in her house even after said allegations, numerous allegations of physical abuse, and the broken bond between the family proves that the trial court did not clearly err in determining that a preponderance of the evidence supported that termination of respondent's parental rights was in the best interests of the minor children. MCL 712A.19b(5).

Affirmed.

/s/ Michael J. Riordan