*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HUNTER/WILDER-HUNTER/WILDER, Minors.

UNPUBLISHED
January 16, 2020

No. 348600
Eaton Circuit Court
Family Division
LC No. 18-020048-NA

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating her parental rights to her minor children, KH, MWH, DW, and AW, under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury to child), (b)(*ii*) (parent failed to prevent physical injury to child), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (battering, torture, or other severe physical abuse). We affirm.

## I. FACTS

In October 2018, the children in this case lived with respondent and the children's father. The family previously had been involved with Children's Protective Services (CPS) because of alleged domestic violence by the children's father toward respondent. On October 12, 2018, the father contacted respondent at work and told her that AW, then approximately two months old, was vomiting. AW continued to vomit the next day and respondent took the child to the hospital where he was diagnosed as having gas. When AW continued vomiting the next day and began having seizures, respondent returned to the hospital with the child where he was diagnosed with two skull fractures and bleeding of the brain. The pediatric critical care specialist overseeing AW's care testified that AW had both old and new hemorrhages around his brain, a fracture over the top of his skull, and three healing broken ribs, and that the injuries arose from abuse. The old brain hemorrhages were at least one month old, and the fresh hemorrhage occurred about three days before the child was admitted to the hospital. The rib fractures were between two and six weeks old. The pediatric specialist testified that AW's seizures were caused by the injuries to his brain. The specialist also noted patterned injuries on MWH that indicated that the child had been whipped with a cord.

-1-

The Department of Health and Human Services (DHHS) filed a petition seeking the removal of the children from their parents' home, which the trial court granted. Both parents reported that they were the only caretakers of AW, and respondent acknowledged that if she was not the person who inflicted AW's injuries, then the children's father must be the perpetrator. Nonetheless, respondent continued to live in the same home with the children's father until he reportedly left the state in February 2019. Respondent testified that she had not harmed the children, and that the father was the only other caretaker of the children, but that she nonetheless had difficulty believing that he had harmed the children.

After the children were removed from the home they received medical evaluations, which revealed that they were suffering from malnourishment and failure to thrive despite the family's receipt of food assistance. DHHS amended the petition to request termination of both parents' parental rights.

At trial, further evidence was introduced that the children suffered from malnutrition, failure to thrive, and severe developmental delays, and that two of the children suffered from post-traumatic stress disorder. Evidence was introduced that while in foster care, the children made great strides forward in their physical health and in their emotional and social development. For example, DW was 15 months old when removed from respondent's care and could not sit up, pull himself up, stand, or walk. After a short time in foster care, he acquired these developmental milestones; he was learning to walk and to "babble," had begun to laugh and play with toys, and would put up his hands to ask to be picked up. MWH, two years old when removed from respondent's care, did not talk, disassociated himself from others, only sat and stared into space, and met physical contact with aggression. After a short time in foster care, he became physically mobile, began to develop awareness of others, and was talking and learning to share. At the time four-year-old KH was removed from respondent's care, she was aggressive and kicked, bit, and screamed, and had a limited vocabulary. After a short time in foster care, KH's vocabulary increased from a few words to full sentences, and she was able to complete age-appropriate tasks.

At the conclusion of the trial on the petition, the trial court entered an order terminating both parents' parental rights to the children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). Respondent now appeals from that order.

II. DISCUSSION

A. STATUTORY GROUNDS

Respondent contends that the trial court erred in finding that statutory grounds for termination of her parental rights were proven by clear and convincing evidence. Respondent does not dispute that AW suffered severe physical abuse. Rather, she argues that petitioner did not establish by clear and convincing evidence that she either caused the injuries or had an opportunity to prevent the injuries. We disagree.

To terminate parental rights, the trial court must find that at least one statutory ground for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). Only one statutory ground need be

established by clear and convincing evidence to warrant termination of parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). We review for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination, MCR 3.977(K); *In re Keillor*, 325 Mich App at 85, and defer to the trial court's factual findings if the findings are not clearly erroneous. *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). A trial court's findings of fact are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake, *id*., deferring to the special ability of the trial court to determine the credibility of witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App at 33.

In this case, the trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

\* \* \*

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

The record supports termination of respondent's parental rights under these subsections. Termination of parental rights is proper under MCL 712A.19b(3)(b)(*i*) when "the child or a sibling of the child has suffered physical injury," "the parent's act caused the physical injury," and "the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Medical documentation showing injuries consistent with physical abuse is sufficient to support termination under subsection (b)(*i*). See *In re Ellis*, 294 Mich App at 31-32. Termination under MCL 712A.19b(3)(b)(*ii*) is proper when "the child or a sibling of the child has suffered physical injury," "the parent who had the opportunity to prevent the physical injury . . . failed to do so," and "the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." Subsection (3)(b)(*ii*) "is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *In re LaFrance Minors*, 306 Mich App 713, 725; 858 NW2d 143 (2014). Under subsection (3)(j), termination of parental rights is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Similarly, under subsection (3)(k)(*iii*), termination is proper when the parent has inflicted severe physical abuse upon the child or the child's sibling and there is a reasonable likelihood that the child will be harmed if returned to the parent.

This Court has held that termination of parental rights is warranted under subsections (b)(*i*), (b)(*ii*), (j), and (k)(*iii*) even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence shows that the respondent either must have caused the child's injuries or failed to prevent the child's injuries. See *In re Ellis*, 294 Mich App at 34-36. When abuse occurred while the child was in the sole custody of the parents, the evidence supports the inference that one parent has perpetrated the abuse and the other parent has failed to prevent it. *Id*. That the evidence does not definitively establish which parent perpetrated the abuse is immaterial. *Id*.

Here, as the trial court found, the evidence demonstrates that AW suffered numerous serious physical injuries that occurred on more than one occasion and were intentionally inflicted. At the time the injuries occurred, the parents were the only caretakers of the child, and their explanations were insufficient to explain the child's injuries. Respondent denied causing the injuries and acknowledged that only she and the child's father were present during the times the injuries occurred, but she still was unconvinced that the children's father caused the injuries. The evidence at trial also indicated that MWH had signs of physical abuse. Respondent was aware of the father's aggressive nature, given the incidents of domestic violence that she reported. Nonetheless, even after AW's injuries were discovered and the children were removed from her care in October 2018, respondent continued to live with the children's father until

-4-

ostensibly he left the state in February 2019. These facts support the termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) because the evidence demonstrated that either respondent caused the injuries or failed to prevent the child's injuries. See *In re Ellis*, 294 Mich at 34-36.

Termination of respondent's parental rights was also warranted under MCL 712A.19b(3)(g) because respondent, although financially able to do so, failed to provide proper care or custody for the children and there is no reasonable expectation that she will be able to provide proper care and custody within a reasonable time considering the age of the children. When there is severe injury to an infant while in the sole care of the child's parents, the evidence demonstrates that neither respondent provided proper care for the child. *In re Ellis*, 294 Mich App at 33. Here, AW was severely injured while in the joint care of respondent and the children's father, and the evidence indicated that MWH also had been abused. Respondent was unwilling to admit that the children's father had committed the abuse and permitted him to remain in the home even after the children were removed. In addition, the children were suffering from malnutrition even though food assistance had been provided to the family. The children were severely developmentally delayed, suffered from behavior problems, and two of the children were suffering from PTSD. The evidence as a whole demonstrated that respondent failed to provide proper care and custody for the children and was unlikely to be able do so within a reasonable time considering the children's ages.

We also reject respondent's argument that she should be given an opportunity to regain custody of the children by completing a case services plan. "Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravating circumstances under MCL 712A.19a(2)." *In re Rippy*, ___ Mich App ___, ___; ___ NW2d ___ (2019), citing *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "MCL 712A.19a(2)(a) states that reasonable efforts are not required if '[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.'" *Id*. When a parent is suspected of perpetrating severe physical abuse or failing to intervene to eliminate that risk, MCL 722.638(1)(a) and (2) require DHHS to seek termination. Therefore, DHHS was under no obligation to provide reunification services to respondent.

### B. BEST INTERESTS

Respondent also contends that the trial court erred in finding that termination of her parental rights was in the best interests of the children. Again, we disagree.

Once a statutory ground for termination has been demonstrated, the trial court must find that termination is in the best interests of the child before it may terminate parental rights. MCL 712A.19b(5). If the trial court finds that a preponderance of the evidence establishes that termination is in the best interests of the child, the trial court is required to terminate the parent's parental rights. *Id*.; *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016).

To determine whether the termination of parental rights is in the child's best interests, the trial court should weigh all the available evidence. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Typically, the trial court considers a variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being in the foster home, and the possibility of adoption. *Id*.

In this case, respondent argues that the trial court erred by determining that termination of her parental rights was in the children's best interests because the children had strong bonds with her, and she provided for their needs. However, the parent-child bond is only one factor for the trial court to consider, and other factors can outweigh the importance of the bond. Here, the trial court recognized that respondent's bond with the children weighed against the termination of her parental rights, but also considered that respondent failed to take steps necessary to ensure the children's safety and well-being. Accordingly, we find no error.

Respondent also argues that the trial court erred by concluding that the foster home provided an advantage for the children, particularly given that the children were separated between two homes. However, undisputed testimony at the termination hearing demonstrated that when the children were removed from her care they were severely developmentally delayed, were suffering from malnutrition, and had behavioral and emotional problems, but made rapid developmental and behavioral progress while residing in the foster homes. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. See *In re Medina*, 317 Mich App at 237 (at the best-interest stage, the interest of the child in a stable home is superior to any interest of the parent).

Affirmed.

/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron