*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PAUL/CARTER, Minors.

UNPUBLISHED
August 18, 2022

No. 359202
St. Clair Circuit Court
Family Division
LC No. 19-000308-NA

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's pair of orders terminating her parental rights to RP and LC, respectively. The trial court terminated respondent's parental rights to RP pursuant to MCL 712A.19b(3)(c)(*i*), (g), (i), and (j), and her parental rights to LC pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (i), and (j). On appeal, respondent argues that the trial court clearly erred by finding that the statutory grounds for termination were proven and that termination of her parental rights was in the children's best interests. We disagree and affirm.

## I. FACTS AND PROCEEDINGS

In October 2019, respondent gave birth to RP. A few days later, the Department of Health and Human Services (DHHS) sought to take custody of RP, alleging that RP's meconium screen was positive for cocaine and THC.[1] The trial court authorized the petition. Thereafter, the trial court assumed jurisdiction over RP as well. The referee report supporting the assumption of jurisdiction explained that respondent used cocaine and marijuana during her pregnancy with RP, that she had "long-standing" drug-abuse issues that previously resulted in termination of her parental rights to her four other children despite receiving treatment, and that respondent "did not have any independent housing or income at the time of [RP's] birth." DHHS then sought to terminate respondent's parental rights to RP, but in February 2020, the trial court declined to do so. The referee explained to respondent that "I'm giving you this opportunity because you self-

---

[1] "Meconium," one expert witness explained, "is the baby's first stool which is formed throughout the second and third trimester." It provides particular insight as to the mother's drug use during pregnancy.

started a lot of these services [for drug abuse] it seems like and making progress and applying yourself. But understand it's not over, okay, you still have to maintain this progress and you still have to show that this is a real sustainable change and that you can get yourself in a position where you can care for your child, all right."

In February 2021, respondent gave birth to LC. DHHS promptly filed a petition to take custody of LC, alleging that respondent attempted to discard LC's first diaper to avoid a meconium test and that respondent "has made little progress on her PATA due to non-compliance with substance use treatment." The trial court authorized the petition.[2] In June 2021, the trial court assumed jurisdiction over LC.

In September 2021, the referee conducted a two-day termination trial for RP and LC. The trial testimony showed that respondent was unable to consistently provide proof of a legal source of income to her caseworkers during this case and that respondent only obtained suitable housing a few weeks before trial. The testimony also showed that respondent consistently attended counseling but had twice attempted and failed to complete in-patient drug rehabilitation at Odyssey House. Most of the drug screens to which respondent submitted during this case were positive. Respondent introduced evidence indicating that she regularly attended "NA" meetings, although the referee stated that some of the chairperson signatures confirming her attendance at those meetings appeared to be fraudulent.

Ultimately, the referee recommended termination of respondent's parental rights to RP and LC, explaining in her written opinion that "[s]ubstance abuse, lack of income and unstable housing have remained issues for respondent for the last 10 years and have been a factor in respondent losing parental rights to four prior children." The referee added that "[r]espondent's failure to engage with Odyssey House is indicative of her lack of commitment to her sobriety." The trial court adopted the recommendation.

This appeal followed.

## II. GROUNDS FOR TERMINATION

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "A trial court's findings of fact are clearly erroneous if we are definitely and firmly convinced that it made a mistake." *Id*. (quotation marks and citation omitted). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

---

[2] Because LC was born in Oakland County, the initial proceedings concerning LC occurred in Oakland Circuit Court. After the petition was authorized, LC's case was transferred to St. Clair Circuit Court and consolidated with RP's case.

The trial court terminated respondent's parental rights to RP pursuant to MCL 712A.19b(3)(c)(*i*), (g), (i), and (j), and her parental rights to LC pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (i), and (j). MCL 712A.19b(3) provides, in relevant part, as follows:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

On appeal, DHHS concedes that MCL 712A.19b(3)(b)(*i*) and (*ii*) cannot provide a basis for terminating respondent's parental rights to LC. Further, we have some reservations about whether respondent was "financially able" to "provide proper care or custody" for her children for the purposes of MCL 712A.19b(3)(g), and whether the record sufficiently showed that her parental rights were previously terminated "due to serious and chronic neglect" for the purposes of MCL 712A.19b(3)(i).

However, the trial court also found that MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to the parent) was proven as to both children by clear and convincing evidence. We agree. Respondent's longstanding issues with drug abuse are well documented, and it was proven that she consumed controlled substances while pregnant with both RP and LC. Testimony at the termination trial established the common-sense proposition that doing so was inappropriate and potentially harmful to her children and that respondent either was, or should have been, aware of this fact at the time. Further, respondent repeatedly changed households during the pendency of this case by moving back-and-forth between Detroit and Port Huron and, at one point, staying at an apparently dilapidated house in Detroit. This tended to show an inability to maintain a secure, long-term household for her children. Respondent also failed to maintain stable employment or even provide proof of stable unemployment or other government benefits. This shows that respondent would have financial difficulty satisfying her children's physical needs, such as food and healthcare, if they were returned to her. Finally, given that respondent failed to show a firm commitment to long-term sobriety over the span of this two-year case, it is reasonable to infer that she would place her own needs above her children's needs if they were returned to her. Taken together, the evidence showed a reasonable likelihood that the children would eventually be harmed if they were returned to her care.[3]

---

[3] Having so concluded, we need not address the remaining statutory grounds for termination identified by the trial court. See *In re Ellis*, 294 Mich App at 32. We would be remiss, however, if we did not acknowledge that respondent showed occasional sparks of effort by, for example, regularly attending counseling sessions and acting appropriately during supervised visitations with RP. In addition, her most recent positive drug screen for cocaine was in November 2020, about 10 months before the termination trial. This indicates some attempt to control her drug-abuse issues, which was lacking in her previous termination cases. Nonetheless, given that her parental rights to her four previous children have been terminated, respondent clearly had an implied obligation to cooperate with DHHS and the court system to the greatest extent possible in the instant case. This is particularly true in light of the fact that the trial court declined DHHS's original request to terminate her parental rights to RP in February 2020. While given the chance, respondent failed to avail herself of the opportunity. In addition to two failed Odyssey House visits, respondent was unable to provide proof of a consistent, stable income or consistent, stable housing. Moreover, as the referee stated in her written opinion, the NA attendance logs introduced at the termination trial "appear[] to contain fraudulent signatures." Respondent's apparent dishonesty with the court system reflects poorly on her commitment to long-term stability and sobriety. As such, even if respondent had legitimate grievances with some of her services, she was still obligated to put forth a greater effort to prove her willingness to become a fit parent. Because respondent failed to do so after two years, we ultimately agree with the trial court that at least one

-4-

## III. BEST INTERESTS

"We review for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

"If a statutory ground for termination is established and the trial court finds 'that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re Ellis*, 294 Mich App at 32-33, quoting MCL 712A.19b(5).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (cleaned up).]

The testimony at the termination trial showed that she acted appropriately with RP during visitations with him. Unfortunately, almost all of the remaining evidence concerning the best-interests factors indicated that termination of her parental rights to both RP and LC was in their best interests. As explained, respondent failed to obtain acceptable, stable housing until a few weeks before the termination trial. In addition, she failed to provide proof of a stable income, instead only showing rare proof of unemployment income. This supports a conclusion that respondent lacks an ability to confidently provide a secure household for her children in the long-term. In contrast to respondent's household instability, LC was doing well in her natural father's care, RP was "thriving" in foster care with three of his older siblings, and the foster parents had indicated a willingness to adopt him.

Further, regardless of the extent to which respondent's inability to obtain a stable income or stable housing was directly attributable to her drug use, as opposed to other issues such as depression, it is clear that respondent did not comply with her case plan to an extent that would aid her. Respondent twice failed to complete rehabilitation at Odyssey House and tested positive for various controlled substances throughout this case. The continued presence of these issues indicated that respondent either was unwilling or unable to put forth sufficient effort to prove that she would be an acceptable parent to RP and LC.

In summary, the trial court declined to terminate respondent's parental rights to RP in February 2020, instead giving her a second opportunity to show that she could maintain sobriety. Respondent failed to do so, even to the point where she consumed cocaine and marijuana while

---

statutory ground for termination, MCL 712A.19b(3)(j), was proven by clear and convincing evidence as to both children.

pregnant with LC. Respondent was given a fair chance in this case but never was able to consistently maintain sobriety, a stable household, or a stable income. After two years, the trial court's finding that termination of respondent's parental rights was in the best interests of her children is both reasonable and supported by the evidence.

## IV. CONCLUSION

The trial court did not clearly err by finding that at least one statutory ground for termination was proven by clear and convincing evidence, nor did it clearly err by finding that termination of respondent's parental rights to RP and LC was in their best interests. We affirm.


/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica