*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Salisbury, Minors.

UNPUBLISHED
January 5, 2023

Nos. 361149; 361150
Wayne Circuit Court
Family Division
LC No. 2016-522708-NA

*In re* J Y C Salisbury, Minor.

No. 361242
Wayne Circuit Court
Family Division
LC No. 2021-001192-NA

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

Respondents are the parents of AB and JS. In addition, respondent-father is the father of CS. In Docket No. 361149, respondent-mother appeals as of right the order terminating her parental rights to AB and JS pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody), (i) (parental rights to a sibling have previously been terminated due to serious and chronic neglect or physical or sexual abuse), and (j) (reasonable likelihood of harm if returned to the parent's home). In Docket No. 361150, respondent-father appeals as of right the order terminating his parental rights to AB and JS pursuant to the same three subsections. In Docket No. 361242, respondent-father appeals as of right the order terminating his parental rights to CS pursuant to the same three subsections as well. In all three appeals, respondents argue that the trial court clearly erred by finding that the statutory grounds for termination were proven and that termination of parental rights was in the children's best interests. We affirm.

## I. FACTS

On May 10, 2016, petitioner filed its petition with regard to AB and JS, alleging that respondents provided improper supervision and based on the history of CPS involvement. The trial court authorized the petition, stating that "[t]he children are at risk in the care of mother and

father." On July 6, 2016, respondents entered a plea to allegations indicating that jurisdiction was warranted because of "an unfit home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian." Eventually, in July 2018, the two children were returned to respondent-father's care.

On March 4, 2019, petitioner filed a supplemental petition requesting that the two children be removed from respondent-father's care. The petition stated that "CPS substantiated . . . allegations and found Preponderance for Improper Supervision, Maltreatment and Physical Neglect." An August 2019 dispositional order explained the status of the case as follows:

> THE REMAINING BARRIER[S] ARE HOUSING, EMPLOYMENT, PSYCHOLOGICAL AND PSYCHIATRIC EVALUATION. THE BIGGEST BARRIER IS HOUSING. . . . THE COURT WILL ALLOW THE FATHER TO RESIDE IN THE HOME OF THE PATERNAL GREAT GRANDPARENTS WHERE THE CHILDREN ARE PLACED. MOTHER WAS NOT PRESENT. DHHS LAST HAD CONTACT WITH THE MOTHER IN JULY. THE MOTHER INDICATED THAT SHE HAD RELAPSED AND WAS ENTERING INTO SUBSTANCE ABUSE SERVICES. . . .

The children were returned to respondent-father's care in October 2019.

In November 2021, the trial court again ordered AB and JS removed from respondent-father's care. The temporary order explained that respondents were abusing drugs and that they did not have a suitable home for the children. At about the same time, petitioner filed a petition requesting that the trial court terminate respondents' parental rights to AB and JS, and another petition requesting that the trial court terminate respondent-father's parental rights to CS. The petition concerning AB and JS included numerous allegations regarding respondents' use of cocaine and other unspecified drugs in the presence of all three children. The petition alleged that respondent-father partially owned a home, but he "reported he cannot go back to the house he is partial owner of in Detroit due to fear of the people [respondent-mother] keeps bringing to the house." The petition added that respondents previously lost parental rights to another child in Florida. The petition concerning CS similarly included numerous allegations regarding respondent-father's use of drugs. That petition requested that the trial court assume jurisdiction over CS and that she be returned to her non-respondent mother.[1]

Testimony at the bench trial confirmed that respondents were generally abusing drugs during these proceedings, and that neither respondent had a stable job or a suitable home for the children. Petitioner had offered services to respondents since 2007, but unfortunately, those services showed no long-term benefit to either respondent. To his credit, however, respondent-father left the children in the care of his grandparents in the fall of 2021. He did this after apparently recognizing that he was incapable of caring for them himself. The paternal great-grandparents were willing to adopt AB and JS.

---

[1] This is the first petition requesting that the trial court assume jurisdiction over CS. Apparently, she lived with her mother until October 2020, when custody was awarded to respondent-father.

The trial court decided to terminate respondents' parental rights, explaining at the conclusion of the bench trial that respondents have "been given a number of opportunities to get it together and yet here we are." The trial court expressed its hope that respondents would overcome their respective drug addictions but indicated that the status quo was unacceptable.

These consolidated appeals followed.

## II. GROUNDS FOR TERMINATION

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "A trial court's findings of fact are clearly erroneous if we are definitely and firmly convinced that it made a mistake." *Id*. (quotation marks and citation omitted). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

MCL 712A.19b(3) provides, in relevant part, as follows:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

We question whether the trial court properly found that MCL 712A.19b(3)(g) was proven by clear and convincing evidence, given the minimal testimony and evidence concerning respondents' financial status. We also question whether the trial court properly found that MCL 712A.19b(3)(i) was proven by clear and convincing evidence, given that the circumstances surrounding the previous termination of parental rights in Florida were not detailed.

However, with regard to MCL 712A.19b(3)(j), the trial court did not clearly err. The testimony at the bench trial showed that respondents were generally unemployed and often homeless. Although respondent-father partially owned a home in Detroit, the individuals frequenting that home were so threatening that respondent-father himself was afraid to reside or bring the children there. Thus, even though respondents nominally had a home, it was not, per

-3-

respondent-father's statements, suitable for the children. Further, as the trial court detailed in its opinion and order, the evidence showed that respondent-mother used drugs in the presence of all three children, and respondent-father gave CS drugs to temporarily hold for him. This suggests that the three children would be continuously exposed to drug use and possession if they were returned to either respondent's care. The facts that respondent-mother could not be contacted during the most recent proceedings, presumably because she was regularly abusing drugs and not living in a stable household, and respondent-father was unwilling to provide the trial court with the name of his purported long-term rehabilitation program, reinforce the trial court's conclusion. Even if exposure to drug use and possession would not necessarily result in physical harm to the children, it invariably would result in some type of mental or emotional harm to the children. See *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) ("For purposes of [subsection (j)], the harm in question need not be physical; a 'risk of *emotional* harm' can suffice.") (citation omitted). Simply put, respondents' drug abuse and resultant household instability over the course of several years despite petitioner's repeated involvement created "a reasonable likelihood" that the three children would be "harmed if . . . returned to the home of [respondents]." MCL 712A.19b(3)(j). The trial court did not clearly err by finding that this statutory ground for termination was proven by clear and convincing evidence. Further, because the trial court did not clearly err by finding that one statutory ground for termination was proven by clear and convincing evidence, any error with regard to the other two grounds for termination, MCL 712A.19b(3)(g) and (i), was harmless. See *In re Ellis*, 294 Mich App at 32.

### III.  BEST INTERESTS

"We review for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

"If a statutory ground for termination is established and the trial court finds 'that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re Ellis*, 294 Mich App at 32-33, quoting MCL 712A.19b(5).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (cleaned up).]

In this case, respondents had an extensive history with CPS, including multiple substantiated allegations of neglect. The trial court looked at drug abuse as the primary issue that caused this neglect and that issue clearly had not been resolved by the time the instant termination proceedings were initiated or by the time the termination orders were entered. Further, before the three children were removed from respondent-father's care, they were repeatedly exposed to

respondents' drug problems. Throughout these proceedings, the whereabouts of respondent-mother were unknown, and respondent-father admitted that he had no home or job. Unfortunately, respondents showed little promise of being able to resolve their drug problems within a reasonable time, given that respondent-father refused to identify his rehabilitation program for the trial court, and respondent-mother candidly admitted to a caseworker that she would continue to use drugs until she was subjected to a drug test.

As the trial court observed, all three children had far superior alternatives to remaining in respondents' unstable care. AB and JS were to be adopted by their paternal great-grandparents, and CS was released to the care of her mother, who was not a respondent in these proceedings. In light of these facts, as well as respondents' repeated inability to successfully resolve their drug problems, the trial court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests.

## IV. CONCLUSION

The trial court did not clearly err by finding that MCL 712A.19b(3)(j) was proven by clear and convincing evidence or by finding that termination of respondents' parental rights was in the children's best interests. We affirm.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan

-5-