*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. R. LITINSKI, Minor.

UNPUBLISHED
December 14, 2023

No. 365244
Wayne Circuit Court
Family Division
LC No. 2021-000295-NA

Before: LETICA, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to JL, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent's home). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In January 2021, respondent and JL's father, KL,[1] verbally argued, and KL left the home. In light of a comment made by KL, respondent called the police. The police arrived and found that the couple's home was unsafe for JL. Specifically, there were nails and broken glass scattered throughout the home, and a broken wooden door was laying on JL's playpen. There was no walkable pathway in the home, and there were empty pill and liquor bottles scattered throughout it. There was a drug pipe located in the bathroom. The police had previously been called by the couple for incidents of domestic violence. In addition to domestic violence, respondent was involved with substance abuse and diagnosed with an untreated mental health disorder. Although efforts were made to keep JL in respondent's home, a petition was filed to remove JL, and he was placed with paternal relatives.[2] Respondent made admissions to substance abuse, an unsuitable

---

[1] KL was also a party to a petition for removal of JL in light of the domestic violence and his own substance abuse. However, KL's successful completion of his treatment plan caused JL to be returned to his care and custody.

[2] Respondent's angry and hostile interaction with the paternal relatives, in part, caused JL to be moved to foster care.

home, and domestic violence with KL. She agreed to a treatment plan that required her to attend all court hearings and weekly parenting time visits, obtain a psychological evaluation and follow its recommendations, attend and benefit from domestic violence counseling, participate in individual counseling, participate and benefit from infant mental health services, obtain suitable housing, obtain a legal source of income, obtain a substance abuse assessment and follow its recommendations, and participate in weekly drug screens.

Nearly two years after JL was removed, respondent had failed to complete or benefit from her treatment plan. Respondent participated in some of the services she was ordered to engage in, but her involvement lessened as the case progressed. During the case, respondent went to Florida to attend to two other minor children that were placed with their father. Respondent entered three inpatient treatment facilities to address her substance abuse issues, but she left each of them shortly after entering care. Respondent continually tested positive for controlled substances during the proceedings. Respondent missed many visits with JL, and was terminated from Infant Mental Health (IMH) because of nonattendance. Respondent did not acquire a legal source of income and was living in her car. Respondent did not demonstrate any benefit from the services provided. In her testimony, respondent acknowledged that she was not currently fit to parent JL, but requested additional time to comply. The trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). The trial court adjourned the hearing for preparation of a clinical study addressing JL's best interests. Following the clinical study, the trial court also determined that it was in JL's best interests to terminate respondent's parental rights because it was unlikely respondent could overcome her substance abuse issues within a reasonable amount of time, respondent failed to show JL's safety would not be at risk with her, and JL needed permanence and stability.

## II. ANALYSIS

On appeal, respondent seemingly submits that the trial court clearly erred when it found statutory grounds to terminate her parental rights because respondent recognized her unfitness and the need for more time to remedy her issues, thereby demonstrating "insight, growth, maturity, and wisdom." We disagree.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (citation omitted). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*.

Parents have a "fundamental right to direct the care, custody, and control" of their children. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). A court may terminate a respondent's parental rights if "182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence,

finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

In the present case, respondent was given nearly two years to rectify the issues which led to the adjudication before her parental rights were terminated. The conditions that led to the adjudication were respondent's drug abuse, unsafe and unfit home, domestic violence with KL, and untreated mental health issues. Respondent failed to rectify any of the conditions that led to the adjudication. She tested positive for many drugs throughout the duration of the case, including methamphetamines, amphetamines, and cocaine, among others. Accordingly, the trial court ordered respondent to participate in random drug screens and substance abuse therapy. Respondent missed 85 of 118 drug screens and continued to test positive for drugs. Respondent attended most of her substance abuse classes, but did not benefit therefrom, as evidenced by her continued substance abuse. She began multiple substance abuse treatment programs but left them prematurely and before completion. Respondent admitted she smoked "crystal meth" while JL was present, and her other children were removed from her care because of her substance abuse issues. Respondent did not take responsibility for her drug addiction, but rather, minimized the severity of her problem. Because respondent failed to participate in the drug screens or otherwise show she had resolved her substance abuse addiction, there was no indication that this issue had been rectified or likely would be in the near future. See *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022) ("[A] respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided.") (quotation marks and citation omitted).

Additionally, respondent did not rectify her inappropriate housing situation. When JL was removed, the police noted respondent's house was unfit for JL because it had empty liquor and pill bottles strewn about, nails and broken glass scattered throughout the home, a wooden door laying on JL's playpen, a methamphetamine pipe in the bathroom, and other safety hazards. At the time of the termination hearing, respondent was homeless and living in her car. Respondent had been living with her mother, but respondent's mother refused to let respondent stay at her home because respondent kept abusing substances.

Respondent also failed to rectify her domestic violence issues. There was evidence that respondent and KL had a volatile relationship. Respondent disclosed that she slept with JL to ensure his safety from KL. However, an act of domestic violence between the couple caused both parties to be jailed for a couple of days. Although respondent did participate in domestic violence classes, she failed to complete her domestic violence counseling and demonstrate a benefit. Respondent continued contacting KL and bringing JL over to KL's house during her visits with JL, despite orders to the contrary. Respondent's caseworker opined that respondent did not benefit from her domestic violence counseling because she continued contacting KL, and was unable to demonstrate a safe, healthy relationship with him.

Finally, respondent also failed to address her mental health issues. Respondent was diagnosed with bipolar disorder, but she did not take her prescription medication. Respondent engaged in some mental health services, but used other drugs to mask her mental health symptoms in lieu of taking her prescribed medication. Respondent was not compliant with her mental health

treatment plan. Respondent's caseworker opined that respondent's mental health issues would create a severe risk of harm for JL if he was returned to her care. In light of the foregoing, we conclude the trial court did not clearly err by finding that MCL 712A.19b(3)(c)(*i*) was satisfied. The conditions that led to the adjudication were never resolved, and respondent's substantial noncompliance left no reasonable likelihood that she could rectify the conditions within a reasonable amount of time given JL's young age. See *In re White*, 303 Mich App 701, 712; 846 NW2d 61 (2014) (holding that the respondent would likely not be able to rectify the reasons that led to the adjudication because she failed to do so during the two-year period she was given).[3]

Respondent also contends the trial court clearly erred by finding it was in JL's best interests to terminate respondent's parental rights because respondent had the maturity and wisdom to recognize that she was not currently fit to care for JL, and merely needed additional time to work toward reunification while KL cared for JL. We disagree.

This Court reviews a trial court's determination regarding a child's best interests for clear error. *White*, 303 Mich App at 713. Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The factors to consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019) (citation omitted).

The trial court found termination was in JL's best interests, despite his relative placement with KL.[4] This finding was not clearly erroneous because respondent failed to make appreciable progress toward rectifying the issues which led to the trial court's assumption of jurisdiction over JL, and there was a reasonable likelihood JL would be harmed if returned to respondent. Respondent's failure to comply with her case service plan demonstrated that it would be in JL's

---

[3] Only one statutory ground must be established by clear and convincing evidence to warrant the termination of a respondent's parental rights. *Ellis*, 294 Mich App at 32. Nonetheless, the evidence also supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) and (j).

[4] See MCL 712A.13a(1)(j) (explaining a "relative" includes any adult related to the child within the "fifth degree"—which includes biological parents).

best interests to terminate the respondent's parental rights. See *White*, 303 Mich App at 713 (holding a respondent's degree of compliance with her treatment plan should be considered in a best-interests analysis). Respondent did not submit to drug screens and continued to abuse controlled substances. Respondent was tested for drugs before her visitation with JL, and her acknowledgment that she was under the influence or her apparent inebriation prevented some visits from occurring. See *Rippy*, 330 Mich App at 361 (holding a respondent's history of substance abuse is pertinent to the child's best interests to terminate the respondent's parental rights).

Additionally, respondent was ordered to participate in parenting classes and attend IMH meetings; however, respondent failed to attend most of her visits with JL and was terminated from IMH because of her nonattendance. There was no indication that respondent benefited from the visits and IMH meetings she did attend. See *White*, 303 Mich App at 713 (holding the parent's parenting ability is a factor the trial court should consider when making a best-interests finding); see also *Atchley*, 341 Mich App at 339 ("[A] respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided.") (quotation marks and citation omitted). Rather, respondent demonstrated she was not committed to parenting JL when she attempted to move to Florida and leave JL. Additionally, respondent's caseworker noted that any bond with JL lessened over time because of the decreased visitation and respondent's time spent during the visits complaining to JL about the child protective proceedings.

Respondent failed to address her mental health and domestic violence issues. Respondent's outburst and inability to control her emotions caused the paternal relatives to stop caring for JL. And respondent was unable to impart her participation in domestic violence classes into a functioning parenting relationship with KL. Overall, respondent's mental health and domestic violence issues supported the trial court's finding that it was in JL's best interests to terminate respondent's parental rights.

A child's placement with a relative weighs against termination of parental rights. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). The trial court acknowledged JL's placement with KL, but found termination was still in JL's best interests, primarily because of respondent's ongoing substance abuse issues and JL's need for permanence and stability. Respondent demonstrated she was not committed to reunifying with JL through her lack of compliance with her treatment plan. Respondent demonstrated her disinterest in reunifying with JL by only visiting JL on 33 of 118 occasions respondent could have visited with him. Additionally, she fell asleep or appeared intoxicated at visits she attended.

Finally, a child's bond with the parent is an important best-interests factor. See *White*, 303 Mich App at 713. Though JL initially had a bond with respondent, the caseworker opined respondent and JL did not have a bond by the time of the termination hearing. Respondent's caseworker opined it would be in JL's best interests to terminate respondent's parental rights because respondent failed to control her substance abuse or mental health issues, and she did not show much interest in visiting or supporting JL over the five months preceding the termination hearing. Respondent admitted she was "no good" for JL, and was not in a position to care for him.

Respondent's caseworker determined that respondent's continued involvement with JL could negatively impact KL's reunification with the child and KL's progress. In light of the foregoing, we conclude the trial court did not clearly err by finding it was in JL's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron