*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. A. PETE, Minor.

UNPUBLISHED
October 13, 2022

No. 360553
Wayne Circuit Court
Family Division
LC No. 2019-000378-NA

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, KP, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist after 182 or more days since the issuance of an initial dispositional order, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time), (g) (failure to provide care and custody), and (j) (reasonable likelihood based on parent's conduct that child will be harmed if returned to home of the parent). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On March 5, 2019, a petition for temporary wardship was filed by petitioner, Department of Health and Human Services (DHHS), requesting that the trial court take jurisdiction over KP and her half-siblings, CH and PM, pursuant to MCL 712A.2(b)(1) and (2).[1] The petition alleged that it was contrary to the welfare of KP to remain in the care of her mother, KM, because of abandonment, substance abuse, and physical abuse issues. After his birth in January 2019, PM tested positive for tetrahydrocannabinol (THC), methadone, cocaine, and morphine. The petition stated that it was contrary to the welfare of KP to remain in the care and custody of respondent,

---

[1] The March 5, 2019 petition for temporary wardship also requested that the trial court take jurisdiction over CH, but requested that PM remain in the care and custody of his father. KM was listed as the mother to KP, CH, and PM. On September 29, 2020, the court entered an order terminating KM's parental rights to all three children. However, respondent is the only parent involved in this appeal. Accordingly, we will refer to KP's mother as "KM" and to KP's father as "respondent."

KP's legal father, because of abandonment. Specifically, the petition alleged that respondent reported that he did not have time to cooperate with Children's Protective Services (CPS), and he recommended that KP remain with KM. Further, it was asserted that respondent had not provided care and custody for KP, nor had he visited, supported, protected, or planned for his child. Following a preliminary hearing, the trial court authorized the petition for temporary wardship, and KP was placed in a fictive kin placement with PM's father under the care and supervision of the DHHS.

Following an adjudication hearing, the trial court found that there were statutory grounds to exercise jurisdiction over KP, CH, and PM as to KM and over KP as to respondent. The trial court found that respondent was not involved with KP, refused to care for her, and stated that he did not care what happened in this case. The trial court also noted that respondent's service plan was reserved until he came forward to plan for KP.

After nearly a year of inactivity, respondent contacted DHHS and sought to plan for KP. Consequently, on March 9, 2020, the court ordered respondent to comply with a treatment plan, including completing parenting classes, obtaining and maintaining suitable housing and a legal source of income, and participating in visitation with KP. Nonetheless, in June 2020, the caseworker filed a supplemental petition for permanent custody requesting termination of respondent's parental rights with regard to KP. The petition alleged that respondent's home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity was an unfit place for KP to live. It was further asserted that respondent failed to comply with the terms of his treatment plan. That is, he failed to provide KP with adequate shelter despite being financially able to do so. The petition requested that the court terminate the parental rights of KM and respondent to KP. Following a termination hearing on the supplemental petition for permanent custody, the trial court found the statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(c)(i) was satisfied. However, because respondent had expressed some interest in parenting KP and had some relationship with her, the trial court found that it was "best for [KP] to maintain [respondent's] rights and allow him an additional 3-6 months to demonstrate an ability to care for her." KP was continued as a temporary court ward with a plan of reunification with respondent, and she resided with CH's putative paternal aunt MH.[2]

After respondent failed to maintain consistent visitation with KP or provide significant financial assistance to MH for KP, in 2021, a supplemental petition for permanent custody was filed requesting termination of respondent's parental rights. It was noted that respondent first appeared before the court in March 2020, and expressed an interest in planning for KP. The court then ordered respondent to comply with a treatment plan that required him to attend parenting classes, participate in infant mental health services (IMF), obtain and maintain a legal source of income and suitable housing, and visit regularly with KP. This petition alleged that respondent

---

[2] Initially, KP was placed in the care of LM, the father of PM. However, LM later expressed that he was unable to care for KP. Consequently, KP was placed with MH and remained with her for nearly three years.

failed to complete or benefit from his court-ordered services. Petitioner requested that the court terminate respondent's parental rights to KP.

Following a hearing on petitioner's supplemental petition for permanent custody seeking termination of respondent's parental rights, the trial court found that respondent failed to comply with the trial court's order regarding financial support for KP, consistently visit KP, or build a strong bond with KP. As a result, the trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court also concluded that termination of respondent's parental rights was in KP's best interests. The trial court stated that KP had been residing with MH for nearly three years, and all of KP's needs were being met. The trial court found that KP was bonded to MH, and that it was in KP's best interests to be adopted by MH. It was determined that a plan of adoption provided KP with "the best prospect for a safe, stable, and nurturing childhood." The trial court entered an order terminating respondent's parental rights to KP. From this decision, respondent appeals.

## II. STATUTORY GROUNDS

Respondent submitted that the trial court erred in determining that the statutory grounds proffered to terminate his parental rights were satisfied with clear and convincing evidence. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id.* at 709-710. This Court must give "due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite [the] time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App at 710 (quotation marks and citation omitted).

The initial petition for temporary custody filed in March 2019, alleged that respondent had not provided care and custody for KP, nor had he visited, supported, protected, or planned for his child. Although the trial court assumed jurisdiction over KP, it did not order DHHS to prepare a treatment plan for respondent but reserved the issue until he came forward to plan for KP. Nearly a year later, in February 2020, respondent contacted the DHHS, expressing an intent to plan for the child, and was advised to attend the next court hearing. In March 2020, the court ordered respondent to complete and demonstrate benefit from parenting classes and IMF, and he was to obtain and maintain suitable housing and income, maintain contact with the assigned caseworker, regularly visit and bond with KP, and attend all court hearings.

Respondent was initially terminated from parenting classes because of noncompliance. He received another referral to the parenting classes and completed them in November 2020. However, the caseworker could not determine whether respondent benefited from his parenting classes because his visitations with KP were inconsistent. While respondent was referred for IMF in October 2019, these services were terminated in June 2020 because of difficulties created by COVID-19 restrictions.

With regard to housing, the caseworker testified that respondent had lived in three different residences since he came forward to plan for KP. One of his proposed residences for the child was deemed unsuitable because it was under construction and needed plumbing work. In proximity to the termination hearing, respondent stated that he lived in a new home with family members. Even so, respondent acknowledged that he did not have a bed for KP at this home, but he did have clothes for her. Because of his frequent moves between residences and his failure to have his housing deemed suitable by the DHHS, respondent failed to comply with the court order requiring him to obtain and maintain suitable housing.

Further, respondent failed to maintain and demonstrate a legal source of income after the court entered the March 2020 order requiring him to do so. During the proceedings, respondent represented that he worked at Popeye's Restaurant, McDonald's, and Chrysler. At the time of the supplemental termination hearing, respondent reported that he was working 40 hours per week at Forman Mills, an apparel retailer. But he also acknowledged that, during the termination proceedings, he was previously unemployed and performed "odd jobs" for income. And it was unclear whether respondent provided proof of his employment at Forman Mills to the caseworker by submitting his paystubs. Respondent acknowledged that he did not consistently pay child support to MH because he needed to pay his own bills and was saving for a house. Accordingly, respondent failed to maintain a legal source of income, at least for some period of time, after the court ordered him to do so, and failed to demonstrate that he could support KP.

Additionally, although respondent was ordered under the treatment plan to regularly visit with KP, his visitation with KP was sporadic. Initially, respondent's visits with KP were supervised and took place at MH's home, though he did not attend all of his visits. After visits later became unsupervised on December 4, 2020, only seven visits were documented by MH in a one-year period. However, respondent attributed his inconsistent visitation with KP, in part, to MH. He indicated that there were times when he went to MH's home but KP was not there. Respondent also cited to a lack of transportation at times.

-4-

Furthermore, respondent failed to maintain contact with the caseworkers for long periods of time. Indeed, respondent acknowledged that he had not contacted the caseworker for a period of time because he believed he only needed to contact MH if he wished to visit KP. Accordingly, respondent failed to comply with this aspect of his treatment plan.

Given that more than 21 months passed between the entry of the March 9, 2020 court order requiring that respondent comply with a treatment plan and the first termination hearing in December 2021, the trial court did not clearly err in determining by clear and convincing evidence that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). Specifically, respondent failed to maintain suitable income and housing, consistently visit KP, and maintain contact with the caseworkers. Further, the trial court did not err in determining by clear and convincing evidence that there was no reasonable likelihood that the conditions will be rectified within a reasonable time considering the KP's age. KP was removed from KM for nearly one-year before respondent chose to plan for his child. At the time KM's parental rights were terminated, the trial court also determined that respondent's parental rights should be terminated under MCL 712A.19b(3)(c)(*i*). Nonetheless, the trial court determined that it was not in KP's best interests to have respondent's parental rights terminated, and respondent was given additional time to plan for and visit the child. Additionally, respondent was referred to the Clinic for Child Studies for a best interests assessment. This evaluation concluded that it was in KP's best interests to have respondent's parental rights terminated in light of the lack of visitation and parental bond. Thus, after 21 months of opportunity to address respondent's issues and KP's placement in foster care for three years, respondent had not resolved the issues that led to adjudication. Under the circumstances, the trial court did not clearly err in determining that MCL 712A.19b(3)(c)(*i*) was satisfied. *White*, 301 Mich App at 709.[3]

## III. BEST INTERESTS

Respondent also concludes that termination was not in KP's best interests under MCL 712A.19b(5). We disagree.

"The trial court must order the parent's rights terminated if the [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best

---

[3] Only one statutory ground must be established to support the termination of parental rights under MCL 712A.19b(3). *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Accordingly, we need not address the other statutory grounds. For purposes of completeness, we note that MCL 712A.19b(3)(j), addressing harm if returned to the parent, was also satisfied. Respondent failed to demonstrate consistent housing and employment such that he would be able to provide a stable home environment for KP. He frequently moved. Although he had room in his most recent home for KP, he did not have a bed for her. Additionally, he failed to regularly visit the child, affecting the bond between the two. KP referred to respondent by his name unless prompted to call him "dad." Although respondent and the maternal grandmother attributed a lack of contact to transportation issues and MH, the trial court did not credit this testimony.

-5-

interests." *In re White*, 303 Mich App at 713. This Court reviews "for clear error the trial court's determination regarding the children's best interests." *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (citation and quotation marks omitted).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *Id.* at 714.

Respondent does not analyze the best interests factors but simply concludes that "on the whole record" termination was not in KP's best interests. A party cannot simply claim error or announce a position and leave it to the appellate court to rationalize the basis for the claim. *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014). Nonetheless, we cannot conclude that the trial court clearly erred in its best interests determination.

Addressing respondent's bond with KP, the caseworker testified that KP did not look to respondent for her daily routine needs. When observing a visit between respondent and KP, MH also did not notice a bond. MH noted that KP did not ask for respondent when he was not there, and she did not refer to him as "dad." Conversely, KP had resided with MH since August 2019, and KP and MH appeared to be bonded. Further, KP called MH "Mommy." MH reported that she wished to adopt KP. She preferred adoption over a guardianship because of the permanency and the desire to avoid additional court proceedings. Accordingly, this factor weighed in favor of termination of respondent's parental rights.

With regard to respondent's parenting ability, a caseworker testified that, when the case began in 2019, respondent stated that he did not want CPS in his life and did not want to be involved. In February 2020, nearly one-year after this case began, respondent reported to the DHHS that he wished to plan for KP. But after coming forward, respondent failed to complete multiple aspects of his treatment plan. Respondent also failed to provide meaningful financial support to MH, giving her approximately $350 in total. When also considering respondent's inconsistent visitation with KP, respondent had not demonstrated sufficient parenting ability or a commitment to improving his parenting ability.

The factor regarding KP's need for permanency, stability, and finality also weighed in favor of termination of respondent's parental rights. KP, who was five years old at the time of the termination hearing, had resided with MH since August 2019. MH reported that she wished to adopt KP, and the caseworker opined that KP appeared bonded to MH. In addition, KP lived with her half-sibling in MH's home, and KP and CH appeared to be bonded. MH provided for all of KP's daily needs, and KP was meeting all of her developmental milestones. Further, MH had the same address for approximately six years and a family support system. Conversely, the caseworker stated that KP did not look to respondent for her daily routine needs. There were

doubts that respondent could provide KP with a safe and suitable home, and he had lived at three different residences after coming forward to plan for KP. Respondent's failure to substantially complete his case-service plan indicated that KP could regress or be subject to harm if placed with respondent. KP initially presented with "potty" and speech issues when placed in care, but those issues were resolved when she began to reside with MH. Accordingly, the factors addressing KP's need for permanency, stability, and finality, as well as the factor regarding respondent's compliance with his case-service plan, weighed in favor of termination of respondent's parental rights. Finally, MH was willing to adopt KP and presented a stable home environment that respondent had not demonstrated. Thus, this factor further weighed in favor of termination of respondent's parental rights. Accordingly, the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in KP's best interests.

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood