*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. Q. HAWKINS, Minor.

UNPUBLISHED
January 19, 2023

No. 362318
Wayne Circuit Court
Family Division
LC No. 2020-000289-NA

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court order terminating his parental rights to his child, CH, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical harm and harm is reasonably likely to happen again), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent's home), (k)(*iii*) (battering, torture, or other severe physical abuse of child or sibling), and (k)(*vi*) (murder or attempted murder of child or sibling). We affirm.

## I. BACKGROUND

Petitioner, the Michigan Department of Health and Human Services (MDHHS), petitioned to remove CH and terminate respondent's parental rights in late February 2020. The petition was primarily based on respondent's alleged involvement in the death of an eight-month-old minor, AA. AA was the son of respondent's former girlfriend and was in respondent's care in late August 2019. Respondent had been caring for AA on August 26, 2019, until approximately 7:00 p.m. when respondent dropped off AA at the maternal grandmother's home. Respondent momentarily stood in the rain looking into the car at AA, who was in a car seat, before grabbing the car seat and taking AA inside the house. Respondent advised the maternal grandmother that AA was asleep. AA remained in his car seat until approximately 11:00 p.m. when AA's mother arrived to get him.

---

[1] The petition also alleged that CH's mother failed to protect CH because she failed to seek custody of him or respond to inquiries from Children's Protective Services (CPS). After the preliminary hearing, the trial court explicitly declined to authorize the petition against CH's mother. It found here was "no evidence that would permit Mother to be named as a respondent."

After AA's mother noticed AA was unresponsive, she and the maternal grandmother transported AA to the hospital. Dr. Robert Sills declared AA dead approximately eight minutes after they arrived at the hospital. The medical examiner determined that AA's death was a homicide resulting from blunt force trauma to the head. MDHHS's petition alleged that AA had "a crushed skull." Respondent's explanation for what happened to AA did not match AA's injuries.[2] Based on these circumstances, MDHHS alleged that there was a reasonable likelihood that CH would be harmed if returned to respondent's care.

The trial court authorized the petition against respondent and ordered no contact between CH and respondent. At trial, respondent pleaded no contest to the court taking jurisdiction and finding statutory grounds upon which to terminate respondent's parental rights. Respondent, however, reserved the right to have a hearing on whether it was in CH's best interests to terminate respondent's rights. The court found grounds for jurisdiction under MCL 712A.2b(1) and (2), as well as grounds for termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*) and (*vi*).[3] The court accepted respondent's no-contest plea.

At the dispositional hearing, to determine the best interests of the child, the court recognized that respondent may not be found guilty in the criminal case because of the higher burden of proof.[4] It found, however, that respondent was caring for AA when AA suffered the fatal injuries, and respondent did not provide an adequate explanation for what happened to AA. The court concluded that there was strong evidence that respondent was responsible for AA's injuries. The court also recognized that CH was placed with a relative—his mother. The court found that termination of respondent's parental rights was in CH's best interests. In its order terminating respondent's parental rights, the court found that termination was in CH's best interests to because respondent was caring for AA on the day he died from blunt force trauma to the head. The trial court also reiterated that respondent never offered an adequate explanation for AA's injuries, and acknowledged that CH was placed with his mother as of the best-interest hearing. This appeal followed.

## II. STANDARD OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

---

[2] Respondent claimed that wood planks leaning against a wall fell on AA while he was in respondent's care. There was no indication that respondent sought medical treatment or alerted the maternal grandmother to the alleged injuries. The medical examiner found respondent's explanation inconsistent with the injuries. Law enforcement seized and tested the planks for AA's DNA, but found none.

[3] The correctness of the trial court's finding of statutory grounds under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*) and (*vi*) is not presently before us. We note, however, that the record does not appear to indicate that CH and AA were siblings or that respondent directly harmed CH.

[4] As of the best-interest hearing, respondent was in jail awaiting trial in his criminal case. He participated in the hearing via video conference.

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). This Court reviews a trial court's decision regarding best interests for clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks, citation, and brackets omitted). "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

Respondent argues that the trial court clearly erred by finding that termination was in CH's best interests because CH was placed with a relative—his mother. We disagree.

In termination proceedings, the trial court must weigh all the evidence available to determine the children's best interests. See *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

The court is "required to explicitly address each child's placement with relatives at the time of the termination hearing." *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012). A court's failure to address the child's placement with a relative is clear error requiring the best-interests finding to be vacated. *Id*. "Indeed, a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), which expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.' " *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). At the time MDHHS filed the petition in this case, and when the trial court entered the order terminating respondent's parental rights, the definition of "relative" did not include biological mother. See 2016 PA 191; *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016) (holding that a biological mother is not included in the definition of relative in MCL 712A.13a(1)(j) then in effect under 2015 PA 228).[5] But see 2022 PA 200

---

[5] The Legislature amended MCL 712A.13a(1)(j) when it enacted 2022 PA 200, effective October 7, 2022. Relevant here, it amended the definition of "relative" to include "an individual who is at least 18 years of age" and is "[r]elated to the child within the fifth degree by blood, marriage, or adoption . . . ." This case, however, began, and the order terminating respondent's parental rights was entered, before the amendment. Accordingly, this case is controlled by the former definition of relative found in 2016 PA 191. See *Johnson v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279

(amending, in part, the definition of "relative" to include an individual at least 18 years of age and related to the child within the fifth degree by blood, marriage, or adoption).

Like here, in *In re Schadler*, the respondent-father argued that the trial court failed to give proper weight to the fact that the child was in a relative placement with the biological mother. *Schadler*, 315 Mich App at 412. The *Schadler* Court rejected the respondent-father's argument, concluding that because a biological mother was not included in the definition of "relative" in MCL 712A.13a(1)(j) in effect at the time, the trial court was "not required to consider that relative placement." *Id*. at 413. The trial court here addressed CH's placement with his mother before terminating respondent's parental rights. It did not, however, have to do so because a biological mother is not a relative as defined by the version of MCL 712A.13a(1)(j) in effect at the time MDHHS filed the petition and when the trial court terminated respondent's parental rights. See *Schadler*, 315 Mich App at 413; 2016 PA 191. The trial court, therefore, had no obligation to acknowledge CH's placement with his mother.

Nonetheless, the trial court considered CH's placement with his mother. At the best-interest hearing and in its order terminating respondent's parental rights, the court acknowledged that CH was placed with his mother and that CH would not be available for adoption. The trial court, therefore, acknowledged CH's placement with his mother at the best-interest hearing and in its order terminating respondent's parental rights. It concluded, however, that termination was still in CH's best interests given the circumstances of AA's death. Accordingly, the trial court addressed the child's placement with his mother even though it was not required.

Respondent also generally argues that the trial court did not address CH's best interests. We disagree.

The trial court addressed CH's best interests when it terminated respondent's parental rights. The court found there was clear and convincing evidence that respondent was responsible for AA's injuries and death. It also noted that respondent failed to provide an adequate explanation for AA's injuries. Only after making these findings did the court terminate respondent's parental rights to CH. A preponderance of the evidence supported these findings and the trial court, therefore, did not clearly err by finding that it was in CH's best interests to terminate respondent's parental rights.[6]

---

(2012) (stating that as a general rule amendments to statutes are presumed to operate prospectively only).

[6] We note that additional evidence not referenced by the trial court supported its finding that termination was in CH's best interests. See *In re White*, 303 Mich App at 713 ("To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors . . . ."). Although a caseworker could not opine about the bond between respondent and CH, she indicated that respondent's visits with CH were suspended throughout this case and there was to be no contact between the two. The caseworker also confirmed that CH looked to his mother for support and comfort, and had "always primarily lived with his mother."

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett

---

A CPS supervisor agreed that termination of respondent's parental rights would provide CH with the permanence, safety, and stability he needed. That same supervisor also expressed concerns that CH would be injured if respondent had "direct access" to CH, given his involvement in AA's death. Despite not discussing this additional evidence, we conclude that the trial court did not clearly err in finding that termination was in CH's best interests based almost exclusively on its finding that there was clear and convincing evidence that respondent was responsible for AA's homicide.