*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J R Machala, Minor.

UNPUBLISHED
May 30, 2024

No. 368535
Shiawassee Circuit Court
Family Division
LC No. 22-014491-NA

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor child, JM, under MCL 712A.19b(3)(h) (parent imprisoned for such a period that child would be deprived of a normal home for more than two years), MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent), and MCL 712A.19b(3)(m)(*i*) (parent convicted of enumerated offense and continuing parent-child relationship would be harmful to child).[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JM was allegedly conceived after respondent raped JM's mother. This case arises out of JM's removal from her mother's[2] care due to allegations of abuse. Respondent was convicted of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, and sentenced accordingly.[3] Respondent's earliest release date is in January of 2036.

---

[1] We note that respondent also argues the trial court erred by finding termination was proper under MCL 712A.19b(*i*) (parental rights to a sibling terminated due to neglect or physical or sexual abuse). However, petitioner, the Michigan Department of Health and Human Services (DHHS), did not seek termination, nor did the trial court make any findings, under this section.

[2] JM's mother was also a respondent in the proceedings below, but is not a party to this appeal.

[3] This Court denied respondent's application for leave to appeal his criminal conviction. *People v Huggins*, unpublished order of the Court of Appeals, entered March 10, 2023 (Docket No. 364525).

## II. STATUTORY GROUNDS

Respondent argues the trial court erred by determining statutory grounds existed to terminate his parental rights. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014) (footnote and citations omitted); MCR 3.977(K). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *White*, 303 Mich App at 709-710.

### B. LAW & ANALYSIS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights[.]" *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

The trial court terminated respondent's parental rights under, in addition to other grounds, MCL 712A.19b(3)(h), because of his imprisonment and far-off earliest release date. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010). Termination under MCL 712A.19b(3)(h) is proper when each of the following conditions are met:

> The parent is imprisoned for such a period that [1] the child will be deprived of a normal home for a period exceeding 2 years, *and* [2] the parent has not provided for the child's proper care and custody, *and* [3] there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [*Mason*, 486 Mich at 160-161 (alterations and emphasis added in *Mason*), quoting MCL 712A.19b(3)(h).]

The first two requirements under MCL 712A.19b(3)(h) permit "a parent to provide for a child's care and custody *although the parent is in prison*; he need not *personally* care for the child." *Mason*, 486 Mich at 161. A parent can provide proper care and custody through a relative. *Id*. at 161 n 11. Lastly, the third requirement "is forward-looking; it asks whether a parent 'will be able to' provide proper care and custody within a reasonable time." *Id*. at 161. "Thus, a parent's past failure to provide care because of his incarceration also is not decisive." *Id*. The two-year period in which a court considers whether a child will be deprived of a normal home is calculated from the date termination is sought, rather than the date the parent's incarceration began. See *id*. at 162.

Respondent summarily argues that the trial court "held his criminal conviction against him to terminate his parental rights without any other information besides supposition on how it might affect a baby in the future." This argument lacks merit. Regarding the first factor under *Mason*, it is undisputed that respondent's earliest release date is in early 2036—over 12 years after the termination hearing, and well over the two-year statutory period provided in MCL 712A.19b(3)(h).

While respondent does not specifically cite *Mason*, his argument appears to rely on the proposition that: "Michigan traditionally permits a parent to achieve proper care and custody through placement with a relative." *Mason*, 486 Mich at 161 n 11. Specifically, respondent argues he could have properly provided care and custody of JM through his relatives, but petitioner, the Michigan Department of Health and Human Services (DHHS), did not take adequate measures to aid in any relative placement. At the termination hearing, respondent identified his grandmother and his mother as potential relative-placements for JM while he was incarcerated. However, both his grandmother and his mother lived out-of-state, and, while respondent informed his caseworker about his mother as a potential placement, the caseworker testified he never informed her about his grandmother. Additionally, the caseworker testified that respondent's mother did not provide the necessary information to facilitate placement. Indeed, the caseworker only had two telephone calls with respondent's mother, during which respondent's mother did not even provide her address, before never hearing from her again.

Furthermore, JM was placed in foster care immediately after her removal, and remained there throughout the proceedings. There is no evidence in the record suggesting that respondent ever contested JM's placement or sought to change her placement. DHHS was not inadequate in its efforts to find and place JM with respondent's out-of-state relatives because neither respondent, nor the relatives, provided the requisite information to facilitate such placement. Thus, respondent was not providing JM with proper care and custody through relatives while incarcerated, and the second requirement under *Mason* and MCL 712A.19b(3)(h) is satisfied.

Finally, the third factor under *Mason* and MCL 712A.19b(3)(h) is also satisfied. JM never met respondent, and the trial court found respondent could not adequately support and build a relationship with her while incarcerated. This was particularly true when considered in light of the fact that respondent was convicted of raping JM's mother. Beyond expressing his desire for JM to live with his mother—from whom DHHS has not heard in over a year—or his grandmother—of whom DHHS did not know at all—respondent took no measures to demonstrate he was able to provide proper care and custody for JM. Given that JM was not placed with respondent's family, and respondent's earliest release date is in 2036, the trial court did not err by determining respondent could not provide proper care and custody for JM in a reasonable time considering her age.[4]

Because MCL 712A.19b(3)(h) was satisfied, we need not address the other statutory grounds respondent challenges. *Ellis*, 294 Mich App at 32.

### III. BEST INTERESTS

Respondent also argues the trial court erred by determining termination of his parental rights was in JM's best interests. We disagree.

---

[4] We note that respondent also argues that the trial court erred by failing to order DHHS to make efforts toward reunification. However, respondent did not raise this argument in his statement of questions presented. Consequently, it is abandoned. *Rippy*, 330 Mich App at 362 n 5.

## A. STANDARD OF REVIEW

We review a trial court's best-interests determination for clear error. *White*, 303 Mich App at 713. "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

## B. LAW & ANALYSIS

> The trial court should weigh all the evidence available to determine the [child's] best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (citations omitted).]

Other factors which can be considered include the length of time the child has been in foster care and the likelihood the child could be returned to the parent's home in the foreseeable future. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018).

Respondent argues the trial court erred because he could have formed a relationship with JM over time "through letters, calls, and visits[,]" and the trial court's decision was based on conjecture. However, JM had no relationship or bond with respondent, and, in fact, never met him. Respondent also never seriously tried to provide JM with a home outside of foster care. Meanwhile, JM had been in foster care since she was three months old, and was bonded with her foster parents, who were willing to provide her with permanency. Additionally, respondent was convicted of raping JM's mother, a fact that could likely confuse and traumatize JM. While respondent attended some lectures on parenting, he never attended any parenting classes. The trial court reasonably determined that respondent's time in prison would impede his ability to form a meaningful relationship with JM, who already had such a relationship with her foster family. The trial court weighed the advantages of JM's foster family against respondent's lengthy prison sentence, and properly determined termination of respondent's parental rights was in JM's best interests.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron