*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* REEVES/REEVES-KNIGHT, Minors.

UNPUBLISHED
March 19, 2026
10:16 AM

No. 374284
Wayne Circuit Court
Family Division
LC No. 2021-000196-NA

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children, JJR and DRK, under MCL 712A.19b(3)(c)(*i*) and (*ii*). We affirm.

## I. FACTS

In February 2021, respondent and the children were living in a home with the children's father, Juma Reeves, as well as another of Reeves' romantic partners, Brandy Nelson, and two of Reeves' other children. On February 16, 2021, Reeves reported to the police that Nelson burned JJR and DRK on their cheeks with a lit cigarette. Nelson explained that she burned the children accidentally but also reported to police that Reeves beat her and locked her in a closet for two days.

Children's Protective Services (CPS) contacted the family several times in the following days and observed that the home was dirty and lacked running water, the utilities to the home were illegally connected, the home was strewn with feces and dirty diapers, the children did not have their own beds, a window in the home was covered with plywood, the home was being heated by a propane heater and the stove, and a dead dog was chained in the backyard. The children were removed from the home and placed with a relative as part of a safety plan. Contrary to the safety plan, Reeves retrieved the children from the relative's home.

Meanwhile, Nelson was reported missing by her family. Police received a tip that Nelson was being held in the trunk of a car driven by Reeves and respondent. Police stopped the car and discovered JJR and DRK in the back seat without proper restraints; the children were covered in feces and urine. Police also discovered a bloody handprint in the trunk of the car; the blood later

was identified as Nelson's. Nelson's body thereafter was discovered in a garage two houses away from Reeves' home. Reeves was arrested and later pleaded guilty to second-degree murder in connection with Nelson's death.

Meanwhile, petitioner, the Department of Health and Human Services (DHHS), petitioned to terminate Reeves' and respondent's parental rights to JJR and DRK. After the petition was amended, respondent pleaded no contest to the court's jurisdiction and agreed to participate in a parent agency treatment plan with the goal of returning the children to her care.[1] Initially, respondent participated in the ordered treatment plan. At a review hearing in June 2022, the foster care worker testified that respondent had housing, was enrolled in domestic violence counseling, and was visiting the children.

By November 2022, however, respondent no longer was participating in the treatment plan. The foster care supervisor testified that respondent had not completed her individual therapy or her domestic violence services, and she was failing to attend many of the scheduled visits with the children. Respondent also was not participating in the children's appointments to address their significant special needs. Following the hearing, the trial court ordered DHHS to file a petition to terminate respondent's parental rights.

After a series of delays, DHHS submitted a supplemental petition seeking termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), alleging that the children have significant mental health needs and that respondent, although aware of her children's participation in mental health services, failed to participate in those services. The petition further alleged that respondent failed to attend 55 of the 137 scheduled visits with the children.

Respondent thereafter pleaded no contest to the statutory bases for termination alleged in the supplemental petition. She admitted that she was given a treatment plan with the goal of reunification, and that she did not fulfill the requirements of her treatment plan. Following the plea, the trial court found that statutory bases existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist and are not likely to be rectified within a reasonable time) and (c)(*ii*) (other conditions exist that cause the children to come within the court's jurisdiction, and the parent has not rectified those conditions after being given an opportunity to do so).

At the hearing to determine the best interests of the children, the trial court admitted respondent's clinical evaluation without objection, and a foster care worker testified that respondent had failed to comply with many aspects of the treatment plan, notably, visiting the children and attending therapy with the children to learn about their needs in light of their developmental delays. At the conclusion of the best interests hearing, the trial court issued its order terminating respondent's parental rights, finding that (1) the children have significant mental and emotional needs, and respondent was not involved in their therapy, (2) while there was a parental bond, the bond was not strong, (3) the children were thriving in foster care, and their foster

---

[1] Reeve's parental rights to the children were terminated.

parents were willing to adopt the children, (4) respondent's untreated bi-polar disorder and schizophrenia hampered her ability to care for the children, (5) respondent attended only 58% of the visits offered, and (6) the children had been in care for almost four years, and respondent was still unable to care for them independently. Respondent now appeals.

## II. DISCUSSION

Respondent contends that the trial court erred by determining that terminating her parental rights was in the best interests of the children. We disagree.

This Court reviews the trial court's decision regarding a child's best interests for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). In doing so, we focus on the child rather than the parent. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). A trial court's decision is clearly erroneous if, although there is evidence to support it, upon reviewing the entire evidence we are left with "the definite and firm conviction that a mistake has been made." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted).

When a trial court determines that a statutory basis for terminating a parent's rights has been established, the trial court must terminate the parent's rights if a preponderance of the evidence demonstrates that termination is in the child's best interests. MCL 712A.19b(5); *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5. When determining the best interests of a child in a termination proceeding, the trial court must weigh the available evidence and should consider a wide variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Sanborn*, 337 Mich App at 276-277. "The trial court may also consider a parent's history of domestic violence, . . . the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted). Also relevant are a child's safety and well-being and the risk a child might face if returned to the parent's care. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

A review of the record in this case demonstrates that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights was in the children's best interests. Both children have significant developmental delays due, at least in part, to the neglect and trauma they experienced as young children. Because the children have extensive special needs, the trial court ordered respondent to participate in the children's medical and behavioral health appointments. Anjel Parkinson, a foster care specialist, testified that after years of services, respondent had not attended any of the children's appointments to learn about their development and the care the children required. Parkinson testified that even when the possibility of losing her children approached, respondent continued to demonstrate a lack of interest in the children's lives and failed to attend their appointments.

Parkinson also testified that although there was a bond between respondent and the children, the bond was not strong. She observed that respondent's visits appeared to be merely part of the children's routine and were "very transactional" rather than emotional. When the

children needed assistance during their visits, they did not go to respondent for help, but instead went to Parkinson, which led her to conclude that respondent's "children are similarly bonded with me as they are her." Parkinson also testified that respondent's visits with the children were inconsistent. Although respondent testified that she lacked transportation to visit the children, Parkinson testified that she repeatedly gave respondent bus tickets, but respondent nonetheless missed approximately 58% of the offered visits.

The trial court considered the length of time since the children had been removed from respondent's care, noting that "[t]hese children waited four years" for respondent to become a better parent, and "[w]e are no closer to that today than we were on the day the children came into care." Given the ages of the children, they had been in the custody of someone other than respondent for approximately 80% of their lives as of the date of the best-interest hearing. During that time, the children were with their foster families in long-term placements, and the foster families were willing to adopt them. The trial court referee further found the children's progress in their foster homes was critically important, and that further time spent attempting to reunify respondent with the children actually would be detrimental to the children.

The trial court thus considered respondent's failure to adhere to the treatment plan, respondent's limited parenting ability, respondent's lack of interest in the children's developmental and mental health progress, the advantages of the children's foster-care placements, and that the bond between respondent and her children was not strong. We observe that the children's need for permanency, stability, and finality with their foster families, where they are thriving, is paramount. See *In re Atchley*, 341 Mich App at 347-348. Accordingly, respondent failed to demonstrate that the trial court erred when it determined that it was in the children's best interests to terminate her parental rights.

Respondent also argues that petitioner's reunification efforts were not reasonable given her cognitive limitations. We note that this issue is not identified as an issue on appeal in respondent's statement of questions presented, and the issue thereby is abandoned. See *In re Rippy*, 330 Mich App at 362 n 5. In any event, we find this argument unpersuasive. Respondent does not identify the services she contends should have been provided, nor has she identified how those services would have helped her become a better parent. See *In re Atchley*, 341 Mich App at 341. Many of the requirements of respondent's treatment plan did not require a high level of comprehension or were already tailored to her individual needs, such as individual therapy and parental visitation, and yet she failed to complete these aspects of the plan. Her lengthy history of noncompliance with the plan that she was offered, with many aspects achievable even with her cognitive limitations, led the trial court reasonably to conclude that further reunification efforts would have been futile. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Affirmed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick