*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JS, Minor.

UNPUBLISHED
June 05, 2026
9:02 AM

No. 378701
Wayne Circuit Court
Family Division
LC No. 2023-000223-NA

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Respondent-father appeals as of right the September 19, 2025 order terminating his parental rights to JS under MCL 712A.19b(3)(a)(*ii*) (desertion), (c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (child would likely be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the original petition, JS was in the care and custody of nonrespondent mother, BC, when BC died suddenly in February 2023. Although JS had no legal father at the time, respondent-father was identified as the putative father and expressed his desire to acknowledge paternity and care for her. In the meantime, JS was placed with her putative paternal grandfather.

After obtaining genetic results that conclusively established respondent-father's paternity, the trial court declared that respondent-father was now the legal father of JS. However, in December 2023, petitioner, Department of Health and Human Services, filed an amended petition that alleged respondent-father had been using heroin with BC in the presence of JS when she overdosed and died. Petitioner therefore renewed its request that the trial court exercise jurisdiction over JS and place her in petitioner's care.

On January 5, 2024, respondent-father pleaded no contest to the allegations set forth in the amended petition and was subsequently ordered to comply with a service plan that included a mental health evaluation, parenting classes, individual therapy with a substance-abuse component, weekly drug screening, and regular supervised visitation.

Although respondent-father was reported to have initially tested positive for alcohol in three of his weekly drug screens, the foster-care worker assigned to JS, Caitlin Banko, spoke positively of respondent-father's progress on his case service plan and the "very strong bond" he had with his daughter. However, by September 2024, Banko had been unable to contact respondent-father and feared that he may have relapsed. Banko recommended that the trial court give respondent-father another reporting period to return to compliance with his service plan.

Respondent-father did not reappear, despite petitioner's best efforts to locate him. In August 2025, petitioner filed a supplemental petition seeking termination of respondent-father's parental rights to JS pursuant to MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g) and (j). At respondent-father's termination hearing, the trial court declared that it would not "keep this case pending for six years for [respondent-father] to come into compliance with the treatment plan." Given respondent-father's disappearance and known substance-abuse problem, the trial court ultimately concluded that petitioner had demonstrated by clear and convincing evidence statutory grounds for termination of respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*) and (j). The trial court further found that petitioner had demonstrated by a preponderance of the evidence that termination of respondent-father's parental rights would be in the best interests of JS because she had been thriving in relative placement with her grandparents, who planned to adopt her.

## II. STANDARD OF REVIEW

A trial court's decision regarding the child's best interests is reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A decision is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). For this Court to find clear error, a decision must be "more than just maybe or probably wrong." *Id*. In applying this standard of review, "regard is given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. ANALYSIS

On appeal, respondent-father argues that the trial court clearly erred by concluding that termination of his parental rights would be in the best interests of JS because she was thriving in a home environment where she could remain while respondent-father resumed work on his service plan. We disagree.

Once the petitioner has presented clear and convincing evidence that persuades the court that a statutory ground for termination is established, the trial court must determine whether termination is in the child's best interests. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). "The trial court should weigh all the evidence available to determine the [child's] best interests." *In re White*, 303 Mich App at 713. When weighing the available evidence to determine the best interests of the child, the focus should be on the child, rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

Factors that a court may consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with relatives when the case proceeds to termination is a factor that must be considered in determining whether termination is in the child's best interests. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). However, although placement with a relative weighs against termination, that fact is not dispositive. *In re MJC*, 349 Mich App 42, 66; 27 NW3d 122 (2023).

Consistent with its obligations under Michigan law, the trial court considered JS's placement with relatives and properly weighed that factor against termination when making its best-interest determination. However, the trial court also observed that JS was with relatives who were open to adoption and who had strong bonds with her, offering JS permanency, stability, and finality.

Respondent-father's argument that the trial court "rush[ed] to termination of parental rights" is unpersuasive. Respondent-father had been missing since June 2024, despite petitioner's best efforts to locate him. The trial court gave respondent-father roughly six months before it ordered petitioner to file a permanent custody petition in the hope that respondent-father would appear. He never did. By the time the trial court had made its best-interest determination in September 2025, respondent-father had been missing for over a year; the trial court's conclusion that termination of respondent-father's parental rights was in the best interests of JS was not rushed. The trial court did not clearly err by finding that a preponderance of the evidence supported the conclusion that termination of respondent-father's parental rights was in the best interests of JS. We affirm.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock